**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **JOEL HOENNINGER, et al.,** | § | |
| | § | |
| **V.** | § | |
| | § | **A-14-CV-798- LY** |
| **LEASING ENTERPRISES, LTD.** | § | |
| **D/B/A PERRY'S RESTAURANT, LLC** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:    THE HONORABLE LEE YEAKEL
       UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiffs' Renewed Motion for Attorneys' Fees (Dkt. No. 256), Perry's

Response (Dkt. No. 258), as well as the original motions, response and reply (Dkt. Nos. 239, 246,

and 248-250). The District Court referred the motions to the undersigned for a Report and

Recommendation pursuant to 28 U.S.C. §636(b) and Rule 1(d) of Appendix C of the Local Court

Rules.

## I.  GENERAL BACKGROUND

This is a collective action under the Fair Labor Standards Act ("FLSA") brought by nearly

350 plaintiffs against Leasing Enterprises, Ltd. d/b/a Perry's Restaurant ("Perry's"). On May 30,

2018, following a bench trial, the District Court entered Findings and Facts and Conclusions of Law,

holding that Perry's was liable to employees for reducing the tips on bills paid with a credit card by

3.25%, that Perry's did not willfully violate the FLSA, and that Perry's violation was a good faith

error. Dkt. No. 222. The parties subsequently conferred and reached an agreement on claimant

eligibility and the amount of wages each eligible claimant was entitled to recover, and on March 27,

2019, the District Court entered Final Judgment. Dkt. No. 238. That judgment awarded 170

plaintiffs a total of $640,234.48, and found 176 others were not eligible for relief based on when they

were employed.  Following entry of the judgment, Plaintiffs filed a motion seeking an award of attorney's fees and costs (Dkt. No. 239), which they later amended to correct calculation errors (Dkt. No. 246).  Perry's responded (Dkt. No. 248) and the Plaintiffs replied (Dkt. No. 250).  The Plaintiffs also filed a notice of appeal, challenging the "no willfulness" finding (which limited the "look back" period for damages to two years instead of three) and the good faith finding (which denied the Plaintiffs liquidated damages).  In light of the appeal, Judge Yeakel dismissed without prejudice the Plaintiffs' original motion for fees.  When, roughly one year later the Fifth Circuit affirmed the Final Judgment (see Dkt. No. 255), the Plaintiffs reurged their motion for fees, stating that they were not requesting any additional fees beyond those originally sought, and they would stand on their prior briefing.  Dkt. No. 256.  Perry's responded by relying on its prior briefing as well.  Dkt. No. 258.

Because it bears on many of the challenges Perry's makes to the requested fees, the Court will briefly review the procedural history of this case.  The case was originally filed on August 20, 2014.  The original complaint noted that prior to this case being filed, "a lawsuit was filed in the Southern District of Texas . . . against the Defendant for the same practices alleged in this Complaint for the time period of December 15, 2010 through January 17, 2013." Dkt. No. 1-1 at 5.  Perry's first response to the suit was a motion to dismiss, which Judge Yeakel denied on the recommendation of the undersigned.  The Plaintiffs then moved forward, seeking conditional certification of the case as a collective action.  At the same time, a final judgment was entered in the Houston case, which Perry's had appealed to the Fifth Circuit. Because the question on that appeal—whether a credit card tip fee was permitted by the FLSA—was also in question in this case, Perry's requested that the Court abate this case pending the Fifth Circuit's decision.  The Plaintiffs were not opposed to a stay so long as they were permitted in the meantime to get notice to potential plaintiffs and it was clear that no plaintiff's period of potential recovery was shortened by virtue of the stay.  After a hearing

2

at which the parties presented their respective positions on a stay to Judge Yeakel, he directed the parties to prepare an order consistent with those discussions. The parties were unable to agree to an order, however, and filed a "motion for help" asking for further direction on the logistics of a stay and sending out notice. Another hearing ensued and further direction by the Court was given, and the parties were once again instructed to submit an order consistent with the discussions. Once again, the parties could not agree on that order, and ultimately, on August 27, 2015, Judge Yeakel entered his own order conditionally certifying the class, and abating the case pending the outcome of the appeal of the Houston litigation.

The Fifth Circuit released its opinion in the Houston case on June 14, 2016, and on June 16, 2016, Judge Yeakel ordered the parties to submit a joint status report. The parties were unable to agree on a joint report, and instead submitted opposing statements. After two ensuing status conferences, a new scheduling order was entered, setting a bench trial for the month of October 2017. The Plaintiffs filed a summary judgment motion on the issues of willfulness and good faith, which Judge Yeakel denied. The parties then filed pretrial materials, including, the week before trial, a stipulation on the issues decided in the Houston case, and the bench trial took place on October 23, 2017. Judge Yeakel issued his Findings of Fact and Conclusions of Law on May 30, 2018, as noted above. After several months of discussions between the parties to apply the final legal conclusions to the various plaintiffs' circumstances, the parties filed a status report of their actions. Dkt. No. 234. A subsequent status report reflected that the parties intended to mediate the issue of attorney's fees, and requested that Judge Yeakel postpone entry of judgment until the mediation was completed. The mediation was unsuccessful, and after being notified of this, Judge Yeakel entered a final judgment on March 27, 2019. This motion for fees and the Fifth Circuit appeal followed.

3

The parties have very different views of the case, and of what an appropriate award of attorney's fees should be. The Plaintiffs note that the case included nearly 350 plaintiffs, and raised a number of complex logistical and other issues, requiring a great deal of work. They further note that they were successful with their primary claim that Perry's method of paying tips violated the FLSA, which led to a judgment in the not-insignificant amount of just over $640,000. Based on this, they request attorney's fees of $761,248.20, and costs in the amount of $48,680.43. Perry's views the case as much less complex, and claims that the primary legal work in the case was accomplished in the related Houston litigation. It takes a very aggressive "red pen" to the Plaintiffs' fee request, argues categorically that *no* compensation should be awarded for any work done in a two year time frame, and ultimately claims that the Plaintiffs should be awarded less than 10% of what they have requested in fees ($72,850), and less than 1.5% of what they ask for in costs ($638). Dkt. No. 248.

## II. ANALYSIS

### A.      Standard for Awarding Fees

The Fair Labor Standards Act provides that "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). While, as in all cases where a court entertains a motion for attorney's fees, "the most critical factor in determining a fee award is the degree of success obtained," *Singer v. City of Waco, Tex.*, 324 F.3d 813, 829 (5th Cir. 2003) (quoting *Romaguera v. Gegenheimer*, 162 F.3d 893, 896 (5th Cir. 1998)), in an FLSA action, "'an attorney's failure to obtain every dollar sought on behalf of his client does not automatically mean that the modified lodestar amount should be reduced.'" *Id.* at 830 (quoting *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 558 (7th Cir. 1999)).

4

The Fifth Circuit uses a two-step process to calculate attorney's fees. *Heidtman v. Cnty. of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). First, a court calculates a "lodestar" figure "by multiplying the number of hours reasonably expended by an appropriate hourly rate in the community for such work." *Id.* In so doing, the court considers whether the attorneys demonstrated proper billing judgment by "writing off unproductive, excessive, or redundant hours." *Walker v. U.S. Dep't of Hous. & Urban Dev*., 99 F.3d 761, 769 (5th Cir. 1996). The plaintiff has the burden of showing the reasonableness of the hours billed and proving the exercise of billing judgment. *Id.* at 770. "The court should exclude all time that is excessive, duplicative, or inadequately documented [and] [t]he hours surviving this vetting process are those reasonably expended in litigation." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). After calculating the lodestar, the court may increase or decrease it based on the factors set forth in *Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714, 717-19 (5th Cir. 1974), abrogated on other grounds by *Blanchard v. Bergeron*, 489 U.S. 87 (1989); *Heidtman*, 171 F.3d at 1043.[1]

Where a prevailing party is only partially successful, the court must consider two further issues: first, the relationship between the claims the plaintiff succeeded on and those he did not, and second, whether the plaintiff achieved a level of success that makes the hours expended a satisfactory basis for a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). Specifically, in a suit where the plaintiff presents "distinctly different claims for relief that are based on different facts and legal

---

[1] Those factors are: (1) the time and labor required by the litigation; (2) the novelty and difficulty of the issues; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved and results obtained; (9) the experience, reputation, and ability of the attorney; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) the award in similar cases. *Id.* at 1043 n.5 (citing *Johnson*, 488 F.2d at 717-19).

theories[,] . . . work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved," and a fee award for that work may not be appropriate. *Id.* at 434-35 (internal quotes omitted).  In contrast, where the suit "involve[d] a common core of facts" or was "based on related legal theories," the court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Id.* at 435.

B.     **The Plaintiffs' Application**

It is an understatement to say the billing records Plaintiffs have submitted with their fee application are "confusing."  As is mentioned in more depth below, the original document submitted—a 144-page spreadsheet in small font with minimal explanatory content (Dkt. No. 239-1 at 61-204)—was not the correct attachment, and had to be replaced.  The replacement was not filed until after Perry's response was submitted, though the Plaintiffs did file an Amended Application before Perry's responded that contained yet a *different* spreadsheet (Dkt. No. 246-16, a 116-page spreadsheet).  The (apparently) correct spreadsheet was then filed twice, and is also a 144-page tiny-font spreadsheet with minimal detail.  Dkt. Nos. 249, 250-1.  It includes the time entries of 34 employees who worked on the case—attorneys, paralegals, and other support—undivided by name or job title.  *See* Dkt. No. 246 at 14.  Within the massive document, the person responsible for a particular entry is often identified only by a partial name or initials, making ascertaining who performed a task and what role that person played very hard.  Moreover, while Steele's affidavit identifies the 13 attorney timekeepers (*see* Dkt. No. 246-1 at ¶¶ 22-34), there is nothing identifying the remaining 21 timekeepers, or their roles. *See* Dkt. No. 246 at 14.

C.     **Perry's Objections**

Complicating matters further, rather than join issue with the Plaintiffs' application head-on, Perry's instead contends that the Court should divide the requested fees into four "quadrants" based

6

on when the work was done, categorically exclude all of the fees in one of the quadrants, and then in the other three quadrants consider six separate objections, and reduce the requested fees in varying amounts across those quadrants based on the objections.  Perry's summarizes their arguments with the following chart:

| CATEGORY | QUAD. 1 | QUAD. 2 | QUAD. 3 | QUAD. 4 | TOTAL |
|---|---|---|---|---|---|
| Not Prevailing | $0.00 | $0.00 | $439,381.00 | $0.00 | $439,381.00 |
| Admin./Clerical | $337.50 | $84,537.50 | $0.00 | $24,933.50 | $109,808.50 |
| Duplicative / Excessive | $17,124.50 | $21,607.50 | $0.00 | $33,623.00 | $72,355.00 |
| Vague/Inadequate Desc. | $87.50 | $800.00 | $0.00 | $33,267.50 | $34,155.00 |
| Mktg./Travel Time | $12,435.00 | $2,710.00 | $0.00 | $0.00 | $15,145.00 |
| Other Cases | $6,340.00 | $517.50 | $0.00 | $105.00 | $6,962.50 |
| Austin Rate Diff. | $1,992.50 | $1,647.50 | $0.00 | $5,182.00 | $8,822.00 |
| **TOTALS** | **$38,317.00** | **$111,820.00** | **$439,381.00** | **$98,411.00** | **$686,629.00** |

Dkt. No. 248 at 17-18.  For each of the six categories of objections, plus the one categorical exclusion, Perry's attaches spreadsheets of its own listing each entry Perry's believes should be disallowed.  Dkt. Nos. 248-13 to 248-19.  These spreadsheets appear to have been built off of the "master" spreadsheet the Plaintiffs submitted, but because neither the Plaintiffs' spreadsheet nor Perry's appendices were submitted to the Court as Excel files, and do not contain line numbers or other unique identifiers, the Court cannot easily compare Perry's appendices to the Plaintiffs' spreadsheet.  So, if the Court were inclined to accept some, but not all, of Perry's objections, using Perry's spreadsheets to apply those reductions to the Plaintiffs' request would be a "challenge."

**D.    Recommendations**

Given all of this, the Court will take its own path in determining the appropriate fees to award in this case, and declines Perry's suggestion that it divide the fees into four time-based categories. Notably (and—in light of the submissions—happily), a "court need not explicitly calculate the lodestar to make a reasonable award" and it has the discretion to instead reduce fees by an across-

the-board percentage when attorney's fees are due only for a portion of the litigation, provided that the fee documentation is adequate. *Jimenez v. Paw-Paw's Camper City, Inc*., 2002 WL 257691 at *23 (E.D. La. 2002) (overall time reduced by 5% to reflect clerical tasks). "Trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox v. Vice*, 563 U.S. 826, 838 (2011); *see also Ramirez v. Lewis Energy Grp., L.P.*, 197 F. Supp. 3d 952, 958 (S.D. Tex. 2016) (remedy for failure to exercise billing judgment was a percentage reduction).

### 1.    Billing for Unsuccessful Claims

From a dollar standpoint, Perry's most significant objection contends that the Court should disallow over $445,000 in fees because, Perry's claims, those fees must have been incurred working on two claims the Plaintiffs lost.  It reaches that conclusion based on the argument that any work done by Plaintiffs' counsel between July 2016 and July 2018 must have been spent working on the willfulness and good faith claims.  Perry's contends that once the Fifth Circuit affirmed the ruling in the Houston Case and the abatement of this case was lifted, Perry's committed to paying all eligible plaintiffs the very amounts they were ultimately awarded.  Despite this, the Plaintiffs insisted on going to trial on the questions of whether the violations were willful and whether Perry's had acted in good faith.  Perry's characterizes the decision to pursue these claims as "relitigating" the issues (because those issues were also raised in the Houston case), and states that Judge Yeakel's conclusion in Perry's favor on the issues was "predictable." Dkt. No. 248 at 3, 5.  But its primary argument is that—categorically—every single action Plaintiffs' counsel took from the time the Fifth

Circuit decided the Houston case (July 2016), to the date Judge Yeakel handed down his Findings of Fact and Conclusions of Law (July 2018), was dedicated to these two losing issues.

There are many fallacies in Perry's argument. It is notable that Perry's does not point to the billing records themselves to support the claim that all of Mr. Steele and his co-counsel's time during these two years was spent on the willfulness and good faith issues. Instead, it seeks to exclude *all* work during the two years on the proposition that Perry's was immediately willing to pay eligible employees back wages calculated using the Houston court's findings, and the only other issues litigated after July 2016 were the willfulness and good faith questions. As the Plaintiffs point out, Perry's is essentially arguing that it is entitled to the relief Rule 68 would have provided Perry's had it made an offer of judgment after the Fifth Circuit affirmed the Houston case. But Perry's never made an offer of judgment—though it certainly could have—and it is thus plainly not entitled to the benefits of Rule 68. More to the point, Perry's entire argument is based on the false assumption that all of the work Plaintiffs' attorneys did between July 2016 and July 2018 was dedicated to the willfulness and good faith issues. That assumption is easily proven false by a quick glance at Perry's own Appendix B (the time entries it wants to exclude), which, on the first page alone includes entries for tasks such as "Receive emails and telephone calls from clients with updated contact and personal information consents," and "Confer with counsel regarding FLSA damages issues." Dkt. No. 248-13 at 3. In the 52 pages that follow there are literally hundreds of entries for tasks that appear to have nothing to do with the Plaintiffs' decision to contest the issues of whether Perry's actions were willful and taken in good faith.

It is also remarkable that at the same time that Perry's is claiming Plaintiffs spent all $445,000 incurred in this time frame on these issues alone, it critiques the extremely limited nature of Plaintiffs' discovery and trial presentations on these issues. Thus, it points out that Plaintiffs took

only one 40 minute deposition before trial, and that the trial lasted less than a day.  Dkt. No. 248 at 3-4.  But rather than advancing the "no fees for quadrant three" argument, these facts are instead evidence that Plaintiffs did not in fact focus all of their work during these two years on the wilfulness and good faith issues on which the Plaintiffs did not prevail, but instead were doing a lot of other work related to the case.

Where a plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee.  *See Fox v. Vice*, 131 S. Ct. 2205, 2214 (2011) ("The fee award, of course, should not reimburse the plaintiff for work performed on claims that bore no relation to the grant of relief."). But the Fifth Circuit has noted that "a party may recover for time spent on unsuccessful motions so long as it succeeds in the overall claim." *DP Solutions, Inc. v. Rollins, Inc.*, 353 F.3d 421, 434 (5th Cir. 2003).  While the Fifth Circuit's decision in the Houston case eventually obviated the need for a trial on the merits of Plaintiffs' base wage claim, Perry's did not stipulate to liability until the week before trial.  Dkt. No. 204.  And the parties continued litigating questions related to Perry's's liability in this case, including which Plaintiffs had legitimate claims, and what their damages were, as the Findings of Fact and Conclusions of Law demonstrate. Dkt. No. 222. Having said this, there is no doubt that Plaintiffs did expend time on these issues, that their arguments re-hashed those presented in the Houston litigation, and that they did not prevail on these points.  A reduction is therefore warranted.  Exercising its discretion, the undersigned recommends that the Plaintiffs' overall fees be reduced by **15% ($114,187.20)** to reflect this.

### 2.    Duplicative or Excessive Billing

Perry's next claims Plaintiffs' counsel spent an excessive amount of time educating newly hired attorneys, receiving and filing consents of individuals agreeing to opt-in as claimants, tracking

the participants, and communicating with claimants.  Dkt. No. 248 at 10-12.  It also challenges the fees Plaintiffs are requesting for preparing the application for attorney's fees.  In the response, Perry's describes a handful of items it believes are suspect, but then refers the Court to an appendix containing hundreds of specific entries, with brief annotations on some of the disputed entries, and others for which it does not provide any specific explanation of why it objects to them.  Dkt. No. 248-14.

With regard to the claim that an excessive amount of time was spent receiving consents from, tracking, and communicating with opt-in plaintiffs, the Court disagrees.  There were 350 parties for counsel to keep up with.  If each of them only called the attorney four times a year, that would amount to more than five such phone calls each day, which would, in addition to the time speaking with the client itself, also necessitate time to document the call and do the follow up it may have required.[2]

With regard to the general complaints of inefficiency, Mr. Steele's affidavit indicates that to account for such matters he exercised billing judgment by reducing the overall fees by just under 8.5% and also did not bill much of the time he spent working on the case. He devotes several pages of his affidavit describing how he exercised judgment to reduce the bill.  He concludes that discussion by stating that through these actions:

> The fees were reduced from $784,305.82 to $718,345.70 The reduced amount represents a total reduction of approximately 8.41%. In my opinion, a total reduction of 8.41% is an adequate exercise of my billing judgment. The case has spanned over 6 years and we have 350 clients in which we communicate with on a routine basis. These amounts again do not account for my time that was not included on the billing, nor does it account for time I previously wrote off. This amount represents all of the time records by timekeepers in our time-keeping system prior to the exercise of

---

[2] The math: 350 plaintiffs x 4 phone calls per year = 1400 phone calls.  There are (roughly) 250 work days in a year.  1400 phone calls ÷ 250 days = 5.6 calls per day.

> additional billing judgment described below. After exercising significant billing
> judgment for the prosecution of this case as well as the preparation of the application
> for attorney's fees, the total number of hours for which I seek compensation is more
> than reasonable in my professional opinion.

Dkt. No. 246-1 at 7-8 (paragraph numbers and formatting omitted). This billing judgment, in the

undersigned's opinion, more than adequately responds to the minor complaints Perry's makes that

certain time entries reflect duplicative or unproductive time.

Perry's also complains about numerous entries for Mr. Steele's time containing the

description "Confer regarding class members and strategy." The combined fees containing these

entries are $13,900. Dkt. No. 248-14 at 7-8. Perry's complaint is that these entries do not reveal the

performance of legal work. *Id.* at 12. In the reply, the Plaintiffs push back on this claim:

> Defendants . . . alleg[e] that times incurred where counsel "confer regarding class
> members and strategy" did not reveal performance of legal work. That conclusion is
> baseless as it has been stated that client communication with hundreds of clients
> occurred frequently. Each entry relates to a claimant or potential claimant with whom
> Mr. Steele personally interviewed or discussed the status of the case. Again, this case
> involved hundreds of Plaintiffs. Each individual Plaintiff was interviewed by counsel
> to fully investigate the case. On many days, as evidence[d] by the billing records,
> many hours were expended doing such.

Dkt. No. 250 at 9. The Court agrees. Given the size of the class, and the lack of evidence to

contradict the Plaintiffs' records, the Court rejects this objection.

Perry's also takes issue with the number of hours Plaintiffs billed in preparing the application

for fees. In general, attorney's fees incurred to prepare a fee application are compensable. *Riley v.

City of Jackson*, 99 F.3d 757, 760 (5th Cir. 1996). As with any other request, the fees must be

reasonable and necessary. *See Hensley*, 461 U.S. at 433. There is an overriding problem with this

objection: it is based on incorrect information contained in erroneous billing records filed by the

Plaintiffs. As a result of an analysis of the massive spreadsheet Plaintiffs attached to the original fee

application, Perry's concluded that the Plaintiffs were seeking to recover over 300 hours of time,

totaling more than $66,000, for the preparation of the Application for Attorney's Fees. Dkt. No. 248 at 14-15. But in the reply, Plaintiffs point out the document Perry's based these conclusions on was "the wrong exhibit" that Plaintiffs had filed due to a "clerical error," and they had "resubmitted the Amended Application with the corrected exhibit." Dkt. No. 250 at 3; *see also* Dkt. No. 246 (the Amended Application). In the corrected exhibit, Plaintiffs detail 59 hours of attorney work related to the fee application, for a total of $17,735 in fees. And in the reply Plaintiffs note that, in the exercise of billing judgment, Mr. Steele had further reduced that amount by 20% or ($3,547), and thus state they are only seeking $14,188 for preparing the fee request—not the $66,000 Perry's objected to. Dkt. No. 250 at 9. All of this was set out in the affidavit of Plaintiffs' lead counsel, Howard Steele, included with the Amended Application for Attorney's Fees that was filed two weeks *before* Perry's submitted its response. Dkt. No. 246-1 at ¶ 38 ("Although our team spent in excess of 59 hours going through the hundreds of pages of billing records in a case that has spanned over 5 years, I have exercised billing judgment and reduced the amount by 20%. I wanted to ensure the court that the application was thorough. I utilized a CPA, and several attorneys and paralegals to do our best job for the court.").

Having reviewed of all of this, the Court concludes that the amount requested by Plaintiffs for preparing the fee application is reasonable. In fact, it is not even clear at this point whether Perry's objects to the final amount requested—$14,188. The amount it objected to was $66,000, and the reply made it clear that was not the amount the Plaintiffs were asking for. All of this was contained in the briefing that pre-dated the Fifth Circuit appeal. When the case was returned to this Court a year later and Plaintiffs reurged their motion, had Perry's wanted to quibble with the $14,188 figure, it had the opportunity to do so. But it chose not to, as it made no new arguments and simply

"incorporated the entirety of its Original Response." Dkt. No. 258 at 2. The Court therefore rejects any objection, if one remains, to the fees for preparing the fee application.

Perry's also objects to time entries for Andrea Lester. Dkt. No. 248 at 11. It appears that Ms. Lester is the accountant that Mr. Steele referred to as having hired to assist with the preparation of the Application for Attorneys Fees. *See* Dlt. No. 246-1 ¶ 38. Plaintiffs do not respond to this point, nor do they offer any authority for the Court compensating a claimant for the costs of an accountant who compiled the records needed for a fee application. The Court will therefore disallow the fees attributed to her **($5,985)**. *See* Dkt. No. 248-14 at 11-12.

Perry's final complaint in this category is that Plaintiffs both bill time directly for attorney Taylor Jones, and also include costs under her name as a "contract attorney." Dkt. No. 248 at 11. Specifically, in the costs spreadsheet, there are two entries listed with an "Expense Type" of "contract labor" (and, oddly, a description of "transcripts Perry's Austin") that list the vendor as Taylor Jones. Dkt. No. 246-21 at 1, 7. The entries are for $2,173.12 and $3,818.09, respectively, for a total of $5,991.21. According to Perry's spreadsheet listing disputed entries, there are also 13 time entries for Ms. Jones, totaling 1.6 hours, billed at $295 per hour, for a total of $472.[3] Dkt. No. 248-14. In his affidavit, Mr. Steele states that Ms. Jones is a 2016 graduate of the Georgetown University Law Center who has been licensed to practice in Texas since 2018, and was an attorney with the Steele Law Group. Perry's suggests that listing Ms. Jones' time as both a cost and part of the fees is double counting. At the end of the day, the Court need not sort this issue out, given that the Court recommends that the costs attributable to Ms. Jones be disallowed. Thus, to the extent

---

[3] As a demonstration of the disconnect between Perry's and the Plaintiffs' spreadsheets, there are 21 entries for Taylor Jones in the Plaintiffs' fees list, which total 3.5 hours, and are also billed at $295 per hour, totaling on the Plaintiffs' list $1,032.50. *See* Dkt. No. 249 at 135-40.

there was any double counting with regard to Ms. Jones' time, that has been remedied by the costs portion of her time being disallowed.

### 3.    Clerical Work

Perry's next contends Plaintiffs improperly seek attorney's fees for clerical work performed by attorneys or paralegals.  Dkt. No. 248 at 12-13; Dkt. No. 248-15.  It is well established that "[c]lerical work performed by an attorney is not recoverable at an attorney's rate." *Johnson*, 488 F.2d at 717.  While no single test determines whether a task is legal or clerical, clerical work generally includes "factual investigation, . . . assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence." *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 (1989).  After a thorough review of the record, the Court finds that the entries Perry's asserts are "clerical" were in fact related to client communication, client intake, and drafting and filing consent forms for opt-in claimants, and the requested reduction is not warranted.  *See* Dkt. No. 248-15.

### 4.    Vague Entries

The court may properly reduce or eliminate hours when the supporting documentation is too vague to permit meaningful review. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 326 (5th Cir. 1995). The Fifth Circuit has not precisely defined the appropriate standard for vagueness, instead leaving the district court with leeway within which to accept or reject fee applications where the court deems the records "not illuminating as to the subject matter" or "vague as to precisely what was done." *Id.* (quoting and citing *Leroy v. City of Hous.*, 906 F.2d 1068, 1080 (5th Cir. 1990)).  The burden is on the party requesting an award of fees to produce supporting documentation that allows the court to verify the applicant's entitlement to a specific award. *Gagnon v. United Technisource, Inc.*, 607 F.3d 1036, 1044 (5th Cir. 2010).  Courts have rejected descriptions such as "library

research," "analyzing documents," "reading background documents," "phone interviews," "revise memorandum," "review pleadings," "review documents" and "correspondence." *See Walker*, 99 F.3d at 773; *LP & L*, 50 F.3d at 326 n.11.

The vast majority of the entries Perry's identifies in this category were made by Mr. Steele and contain the description "confer with client(s)" or "correspond with client(s)." *See* Dkt. No. 248-16 at 4.   These entries are very similar to those discussed above, where Mr. Steele used the description "confer regarding class members and strategy." As with those entries, while the descriptions "confer with client" or "correspond with client" are terse, they are not so vague as to make it impossible to know what they purport to describe.   They all describe Mr. Steele either speaking with or emailing one or more of the plaintiffs in this case.   Perry's does not contend that such communications are not compensable.   And as Plaintiffs noted with regard to the similar complaint already addressed above, "this case involved hundreds of Plaintiffs. Each individual Plaintiff was interviewed by counsel to fully investigate the case. On many days, as evidence[d] by the billing records, many hours were expended doing such."   Dkt. No. 250 at 9.   There being no evidence to the contrary, the Court rejects these objections.

### 5.      Time Spent on Marketing, Other Cases, or Traveling

In this category, Perry's identifies a number of hours Plaintiffs' timekeepers spent working on what it contends were marketing tasks, such as "Analyze features for website" and "Research regarding facebook and advertisement," and "Prepare social media."   Dkt. No. 248-17 at 9.   Given that this was a collective action, and that it is common to use websites and social media to give parties notice of their right on opt in, and to keep opt-in parties up to date on the progress of the case, such entries are not necessarily "marketing" work as Perry's contends.   Indeed, the very notice the Court approved in this case included Twitter and Facebook links within the notice.   Dkt. No. 53 at

16

2.  And the parties filed a number of briefs regarding, and argued at a hearing about, a website put up by the Plaintiffs' counsel and whether it should be removed.  Many of the complained-of entries appear to be related to these motions.  *See* Dkt. 248-17 at 7 (nearly half of challenged entries on this page relate to work preparing a response to Perry's motion to remove a class website). The Court is not persuaded by Perry's argument regarding these entries.

Perry's next identifies several entries for work spent on other cases, including Plaintiffs' Houston suit.  *See* Dkt. No. 248-17 at 4, 6, 10.  Plaintiffs do not respond to this argument. These time entries should therefore be disqualified from consideration, which results in a reduction of **$6,962.50.**

Finally, Perry's also identifies a number of entries in which Plaintiffs' counsel billed time for travel between his Houston office and Austin for his attendance at hearings, depositions, and mediation.  *See* Dkt. No. 248-17.  When no legal work is performed during the travel, it is appropriate to reduce travel time to reflect this.  Courts in this circuit typically compensate travel time at 50% of the attorney's rate in the absence of documentation that any legal work was accomplished during travel time. *Watkins*, 7 F .3d at 459; *Hopwood v. State*, 999 F.Supp. 872, 914 (W.D. Tex. 1998), *aff'd in relevant part & rev'd in part on other grounds*, 236 F.3d 256, 281 n.107 (5th Cir. 2000), *cert. denied*, 121 S.Ct. 2550 (2001).  It is unclear from the record whether any legal work was performed during counsel's travel. Because Plaintiffs have not shown that legal work related to this case was performed during travel, the travel time should be reduced to reflect this. As noted, the appropriate reduction is 50%, which results in a travel time reduction of **$2,106.25.**

    6.     **"Austin Rate" Reduction**

Reasonable hourly rates are determined by looking to the prevailing market rates in the relevant legal community for similar services by attorneys of "reasonably comparable skills, experience, and reputation."  *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381 (5th Cir. 2011)

(quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).  These rates are usually established through affidavits of other attorneys practicing in the relevant community.  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  The Fifth Circuit has interpreted the "relevant community" to mean the city in which the district court sits. *See, e.g., Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 770 (5th Cir. 1996) (describing the relevant community as the "Dallas legal market").

Plaintiffs seek fees for thirty-four timekeepers in this case, ranging in hourly rate from $45 to $525 per hour.  Dkt. No. 246 at 14.  Perry's argues that Plaintiffs improperly utilized Houston attorney and paralegal rates, when Austin is the relevant community.  Dkt. No. 248 at 16-17. Accordingly, Perry's requests that the Court apply an "Austin Hourly Rate Differential," to adjust the rates for  Plaintiffs' lead counsel, Howard Steele, and the Plaintiffs' paralegals, to reflect the appropriate Austin rates. *Id.* at 17; Dkt. No. 248-19.  In their Reply, Plaintiffs agree with Perry's that Austin rates apply in this case.  Dkt. No. 250 at 8.  Perry's calculated the reduction in the total fee amount that occurs by applying these reduced rates to be **$8,222**,[4] and Plaintiffs do not contest this.

7.    **Summary**

Aggregating the reductions identified above, the Court concludes that Plaintiffs' requested fees should be reduced by a total of **$137,462.95**, resulting in a total of **$623,785.25.**

**B.    Costs**

Plaintiffs also seek an award of their costs.  Under 28 U.S.C. § 1920, a court may tax the following costs: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the

_____

[4] Perry's refers to this amount in its response as "$8,822."  A review of the underlying figures, however, suggests that this was a typo, as tallying the underlying figures results in the sum of $8,222.

copies are necessarily obtained for use in the case; (5) docket fees; and (6) compensation of court-appointed experts, interpreters, and special interpretation services. 28 U.S.C. § 1920. Perry's argues costs beyond those authorized by 28 U.S.C. § 1920 are not permitted. *Id.* at 19-21. However, a number of district courts in Texas disagree, and have determined that certain costs beyond those taxable under § 1920 may be included as part of the award of attorney's fees under the FLSA. *See Castro v. Precision Demolition LLC*, 2017 WL 6381742, at *10 (N.D. Tex. Dec. 14, 2017); *Rouse v. Target Corp.*, 181 F. Supp. 3d 379, 392 (S.D. Tex. 2016); *Alex v. KHG of San Antonio, LLC*, 125 F. Supp.3d 619, 630 (W.D. Tex. 2015). These include such things as costs for travel, meals, lodging, photocopying, long-distance telephone calls, computer legal research, postage, courier service, mediation fees, exhibits, document scanning, and visual equipment litigation expenses. *Id.*

In determining an appropriate award of costs the Court has broad discretion. *Gibbs v. Gibbs*, 210 F.3d 491, 500 (5th Cir. 2000). The Court is, however, to give "careful scrutiny" to the items proposed by the prevailing party. *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 335 (5th Cir. 1995) (citing *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235 (1964)). The burden of proof is on the party seeking recovery of its costs to demonstrate the amount and necessity of its costs. *Holmes v. Cessna Aircraft Co.*, 11 F.3d 63, 64 (5th Cir. 1994). The Court is free to decline to award costs where the expenses are not deemed to have been "reasonably necessary" to the litigation. *See, e.g., Cypress–Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257-58 (5th Cir. 1997). As one district judge put it:

> If the party against whom costs are taxed does not specifically object, the costs sought are presumed necessary for the case. If there is an objection, the party seeking costs has the burden of supporting its request with evidence documenting the costs incurred, and proof, if applicable, as to whether the challenged amount was necessarily incurred in the case.

*Kellogg Brown & Root Int'l, Inc. v. Altanmia Commercial Mktg. Co. W.L.L.*, 2009 WL 1457632, at

*3 (S.D. Tex. May 26, 2009).

Perry's raises several objections to these costs.  First, it contends that Plaintiffs' claims for

costs are improper because they were not reasonably incurred to the extent they were the result of

the suit being filed in Austin, not Houston.  Dkt. No. 248 at 18-19. Perry's argues that Plaintiffs

needlessly caused costs of travel, lodging, and meal expenses that could have been avoided if they

had filed the matter in Houston, where Plaintiffs' counsel resides, rather than "forum-shopping" and

filing in Austin.  *Id.* Perry's cites no authority for this argument, venue was plainly proper in this

Court, and the Court therefore rejects the argument.  More substantively, Perry's contends that

Plaintiffs failed to substantiate their requests for costs with a demonstration of how the costs were

undertaken in the pursuit of a claim upon which Plaintiffs prevailed. Dkt. No. 248 at 21-22.  Perry's

points out as examples the $1,757.71 in costs for printing and reproduction, $2,693.74 in transcript

costs, and $5,902.17 in research fees, all of which are included among the items Plaintiffs seeks

compensation for.  None of these items include any explanation of their connection to the claims

presented or how the expenses were necessary to the litigation.

In fact, the fee application itself barely mentions costs, and only includes a difficult-to-

navigate exhibit that appears to be a bare list of all of the expenses Plaintiffs seek compensation for.

Dkt. No. 246-21.[5]  The total costs sought, based on the amount set out in this document, is

$46,419.26.  Separately, in an attachment listing the fees and expenses from Mr. Sturm's firm, there

is a line item for "travel expense for trial" in the amount of $2,261,17.  Dkt. No. 239-1 at 58.  The

---

[5] The exhibit is difficult to navigate because it appears to be a poorly formatted spreadsheet, where the first three columns are printed on one page, and the next three columns are printed on a second page, with all of the first pages grouped together, followed by all of the second pages.  Thus, to look at what should be the first page of the spreadsheet, one has to look at pages 1 and 7 of the exhibit, page two of the spreadsheet is actually pages 2 and 8 of the exhibit, and so forth.

total costs Plaintiffs request are thus $48,680.43.  From what one can deduce from the spreadsheet, these costs relate to travel, meals, lodging, photocopying, transcript orders, e-filing fees, postage and delivery fees, and process server fees.  *See* Dkt. No. 246-21.  To provide an example of the information in the spreadsheet, the first and third lines of the spreadsheet (had they been printed on a single page) are reproduced here:

| Vendor | Date | Description | Expense Type | Account | Amount |
|---|---|---|---|---|---|
| Hudson | 01/06/2014 | CHECKCARD 0104 HUDSON AMSCYS PHO PHOENIX AZ 5543286400500020403719 2 CKCD 5994 5348750000215277 | Books & Journals | Business advantage Chk (6001) | $31.39 |
| Arlinda Rodriguez | 09/03/2015 | transcripts Perry's Austin | Contract Labor | Business Advantage Chk (6001) | $419.65 |

Dkt. No. 246-21 at 1, 7.  The spreadsheet itself contains several hundred entries, much like these. Plaintiffs' application provides no additional description of what each entry was for, how it relates to the case, or why it was necessarily obtained for use in the case.  Thus, for example, with regard to the first item the Court is at a complete loss to know even *what* it is, much less how it relates to this case.  The second item, on the other hand, appears to reflect the cost of a transcript of a hearing in this case, but the Court can deduce that only because it knows Arlinda Rodriguez is the court reporter for Judge Yeakel's court.  But it is not clear which hearing this was, why a transcript was needed, and whether it was necessary to a claim on which the Plaintiffs prevailed.

As already noted, the burden is on the party seeking costs to demonstrate they are entitled to recover them.  As Judge Rosenthal noted in *Kellogg Brown & Root*, if there is no objection to a request for costs, a court should presume they were necessary for use in the case.  But where there is an objection—as there is here—then "the party seeking costs has the burden of supporting its request with evidence documenting the costs incurred, and proof, if applicable, as to whether the challenged amount was necessarily incurred in the case."  *Kellogg Brown & Root*, 2009 WL

1457632, at *3.  Plaintiffs have completely failed to offer such proof.  In fact, the only response Plaintiffs provide to Perry's objections is the following, contained in the reply:

> In the five years of litigating this case, Plaintiffs have incurred costs related to ordering transcripts of hearings, e-filing fees, travel costs, printing costs, postage and delivery fees, and process server fees. The costs incurred were reasonably related to the case and have been itemized to show every expense requested by Plaintiffs.

Dkt. No. 250 at 7-8.  This is far less than what is required to justify the award of expenses as "costs," particularly in light of how cryptic so many of the entries in Plaintiffs' costs spreadsheet are.  The only costs Perry's does not object to are the filing fees in the case, which total $638.  Perry's objections to Plaintiffs' costs are well taken, given the dearth of information Plaintiffs have provided the Court regarding their expenses and how they relate to the claims here. Therefore, the undersigned recommends that Plaintiffs only be award costs of $638.00.

## III.  RECOMMENDATION

Based upon the foregoing, the undersigned **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Plaintiffs' Renewed Motion for Attorneys' Fees (Dkt. No. 256).  Specifically, the undersigned **RECOMMENDS** that the District Court **GRANT** the Plaintiffs **$623,785.25** in attorney's fees, and **$638.00** in costs, and **DENY** all other relief requested.

The Clerk is directed to remove this case from the undersigned's docket and return it to the docket of the Honorable Lee Yeakel.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).  A party's failure to file written objections to the proposed findings and recommendations contained in this Report within

22

fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.   28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 12th day of February, 2021.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE